# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RETRACTABLE TECHNOLOGIES INC., § <br> and THOMAS J. SHAW, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> BECTON, DICKINSON AND COMPANY, § <br> § <br> Defendant. § | CIVIL ACTION NO. 2:07-CV-250 |

## O R D E R

Before the Court are Defendant's Motions in Limine, Plaintiffs' response, Plaintiffs' Motions in Limine, Defendant's response, and Defendant's amended response. Dkt. Nos. 223, 259, 229, 258, and 261, respectively. Also before the Court are Plaintiffs' September 22, 2009 letter briefing and Defendant's September 23, 2009 letter briefing (Dkt. No. 261 at Appx.). This letter briefing from the parties indicates which limine items are unopposed and also provides brief arguments regarding limine items that are opposed. Also, at a September 18, 2009 pretrial conference, the Court heard oral arguments on several issues presented by the parties' motions in limine. Further, the Court has considered and addressed, by way of seven October 2, 2009 Orders regarding objections to expert testimony, many of the issues raised in the parties' motions in limine. Having considered the briefing, oral arguments of counsel, and the Court's October 2, 2009 resolution of various issues, the Court finds that Defendant's motions and Plaintiffs' motions should be GRANTED IN PART and DENIED IN PART, as detailed herein.

## I. DEFENDANT'S MOTIONS IN LIMINE

1. Antitrust, False Advertising, and Unfair Competition Claims

Defendant moves to exclude, for example, "any suggestions, assertions, charges, or

allegations that [Defendant] is a monopolist, prevents others from entering the market, seeks to preserve its market share by improper means, misleads the public, colludes with Group Purchasing Organizations, engages in improper marketing practices, or does any other anticompetitive, deceptive, or unfair business practices." Dkt. No. 223 at 1.  Plaintiffs responded in letter briefing that they will "show that [Defendant] sabotaged the market for the new, safer technology by introducing an inferior retractable syringe to its captive market . . . ."  Plaintiffs also submit that they "do[] not plan to relitigate [their] allegations of anti-competitive conduct by [Defendant]."  Dkt. No. 259 at 1.  By its October 2, 2009 orders, the Court has addressed this issue by excluding certain expert opinions on projected lost profits and purported market dominance.  *See* Sealed Order regarding Defendant's Motion to Exclude Expert Testimony of Walter Bratic, Dkt. No. 248 at 7-9.  Defendant's motion in limine should therefore be GRANTED as to item number 1.

2.  Other Litigation Involving Plaintiffs or Defendant

>   Defendant moves to exclude references to other litigation, including the following:
>
>   • 5:01-cv-00036-DF, Retractable Technologies, Inc. v. Becton Dickinson and Company, et al. (settled suit for antitrust, tortious interference with business relationships, business disparagement, and common law conspiracy)
>
>   • 4:02-cv-00034-LED, Retractable Technologies, Inc. et al. v. New Medical Technology, Inc., et al. (settled suit for patent infringement)
>
>   • 4:03-cv-00049-LED, Retractable Technologies, Inc. et al. v. New Medical Technology, Inc., et al. (settled suit for patent infringement)
>
>   • 5:07-cv-00137-DF, Becton Dickinson and Company et al. v. Retractable Technologies, Inc. (patent infringement suit)
>
>   • 2:08-cv-00016-DF, Retractable Technologies, Inc. v. Becton Dickinson and Company (antitrust, false advertising, and unfair competition claims severed from the present case)

    • 6:08-cv-00120-LED, Retractable Technologies, Inc. v. Occupational & Medical Innovations, Ltd. (suit for patent infringement, trade secret misappropriation, conversion, intentional interference with contractual relations, unfair competition, and false advertising)

    • 6:08-cv-00353-LED, Retractable Technologies, Inc. et al. v. Safety Medical International, Inc. (patent infringement suit)

Dkt. No. 223 at 1-2. Defendant submits, for example, that "[t]o the extent evidence of other litigation is offered to show [Defendant] and/or [Plaintiffs] ha[ve] a character to sue or to violate laws warranting suit, it should be excluded under Federal Rule of Evidence 404." *Id.* at 2. By October 2, 2009 Order, the Court has excluded certain expert testimony regarding the settled litigation between Plaintiffs and New Medical Technology ("NMT"). *See* Order regarding Defendant's Motion to Exclude Testimony of William A. Hyman. Dkt. No. 253 at 7. Plaintiffs now urge that "the fact that the parties were in litigation simultaneously with the hypothetical negotiation would have a material effect on such negotiation." Dkt. No. 259 at 1. On balance, evidence of other litigation offered to prove Defendant's liability or the extent of damages should be excluded pursuant to at least Federal Rules of Evidence 403, 404, and 408. *See also Rude v. Westcott*, 130 U.S. 152, 164 (1889) ("[A] payment of any sum in settlement of a claim for alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement."). Defendant's motion in limine should be GRANTED as to item number 2.

3. Defendant's Size and Wealth

    Defendant argues that any evidence regarding its size and wealth would unfairly prejudice the jury. Dkt. No. 223 at 2-3. Plaintiffs respond in letter briefing that "[Defendant's] size and wealth are part and parcel of its market dominance and control" and that "[Defendant's] position as the largest manufacturer and seller of syringes in the country is relevant to the jury's

understanding of the facts in this case." Plaintiffs also submit that "[i]n any actual negotiation between these parties, the disparity in their size and market share would play an important role [and] the jury's consideration of the hypothetical negotiation that would have occurred if [Defendant] is found to have infringed these patents cannot ignore these same facts." Dkt. No. 259 at 2. Plaintiffs also submit that they "do[] not understand BD's motion, as framed, to seek to exclude all mention of market share—just allegations of illegal maintenance of that market share by 'improper means.'" *Id.* at 2 n.1.

As submitted by Plaintiffs, market share can be relevant to determining a reasonable royalty. *See, e.g., Rosco, Inc. v. Mirror Lite Co.*, 626 F. Supp. 2d 319, 332, 336 (E.D.N.Y. 2009). The Court has already excluded by its October 2, 2009 Orders, however, opinions regarding Defendant's purported power in the market, control over the market, efforts to maintain market power, and other anti-competitive conduct. *See* Sealed Order regarding Defendant's Motion to Exclude Expert Testimony of Walter Bratic, Dkt. No. 248 at 7-10. Accepting as true that Defendant is agreeable, Defendant's motion in limine should be GRANTED as to item number 3 <u>with the understanding that Plaintiffs can present evidence of Defendant's market share</u>, albeit without presenting evidence regarding Defendant's alleged control of the market, efforts to maintain market power, wealth, and other similar evidence discussed in Defendant's motion in limine and in the Court's October 2, 2009 Orders. If Defendant disagrees or the parties otherwise have a dispute as to the scope of admissible evidence in this regard that has not already been resolved by the Court, the parties should present any such dispute to the Court by appropriate motion.

4.  <u>Unsafe Injection Practices</u>

Defendant moves to exclude evidence regarding unsafe injection practices. Dkt. No. 223

at 3.  "That people, such as illegal drug users and impoverished patients in Africa, intentionally reuse or misuse needles or syringes does not make a fact of consequence in this patent infringement case more or less probable," Defendant argues.  *Id.*  Plaintiffs respond in letter briefing that such evidence is relevant to, for example, non-obviousness, the benefits of the purported invention, and availability of acceptable non-infringing substitutes.  *See also* Dkt. No. 259 at 5.  By October 2, 2009 Order, the Court has addressed the extent to which such testimony is admissible.  *See* Order regarding Defendant's Motion to Exclude Expert Testimony of Stephen F. Minkin, Dkt. No. 251.  Defendant's motion in limine should be GRANTED IN PART and DENIED IN PART as to item number 4, in accordance with the principles articulated in the Court's Order regarding Mr. Minkin.  *See id.*

5.  Safety Effectiveness of Safety-Lok, SafetyGlide, and Eclipse

Defendant argues that "[w]hether these products achieve some ideal level of safety effectiveness is irrelevant."  Dkt. No. 223 at 4.  Plaintiffs respond in letter briefing that they must be able to "compare and contrast the inventions at issue with prior safety needle technology," including Defendant's Safety-Lok, SafetyGlide, and Eclipse products.  *See also* Dkt. No. 259 at 5.  By October 2, 2009 Orders, the Court has declined to exclude evidence regarding the safety effectiveness of these products.  *See* Order regarding BD's Motion to Exclude Expert Testimony of Stephen F. Minkin, Dkt. No. 251 at 7-8; Order regarding BD's Motion to Exclude Expert Testimony of William A. Hyman, Dkt. No. 253 at 5.  Defendant's motion in limine should therefore be DENIED as to item number 5.

6.  Defendant's Assertion of Attorney-Client Privilege

With respect to its "decision to assert the attorney-client privilege and work product protection with respect to opinions of counsel," Defendant submits that it "is not relying on

5

opinions of counsel to defend against willful infringement, and it is improper for [Plaintiffs] to ask the jury to infer that the information withheld is adverse to BD's interests." Dkt. No. 223 at 4-5 (citing *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) (en banc), and *In re Seagate Tech., LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007). Plaintiffs respond:

> [T]he fact that there is no admissible evidence of an infringer seeking competent legal advice is relevant, even where opinions were obtained but not disclosed. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008). Therefore, while [P]laintiffs agree that [they] will not reference, argue or offer evidence relating to BD's decision to assert the attorney-client privilege without first approaching the bench, the fact that there is no evidence of any legal advice supporting the actions of Defendant is relevant and admissible in connection with the willfulness issue.

Dkt. No. 259 at 6.

Although the district court under review in *Broadcom* found that "failure to seek legal advice" can be part of the "totality of circumstances" in determining willfulness, the *Broadcom* court did not address the correctness of that holding in detail, presumably because the district court had vacated the willfulness verdict in light of the decision in *In re Seagate*, which was released shortly after trial. *Broadcom*, 543 F.3d at 687 and 700. Also, although the accused infringer in *Broadcom* asserted privilege over opinions of counsel regarding invalidity, the accused infringer had not obtained opinions of counsel on infringement, in apparent contrast to the case at bar. *See id.* at 697. This Court must therefore take special note of authorities that indicate "invoking the attorney-client privilege or work product protection does not give rise to an adverse inference" as to willfulness. *In re Seagate Tech., LLC*, 497 F.3d at 1369 (citation omitted); *see also Knorr-Bremse*, 383 F.3d at 1344 (*en banc*) ("The adverse inference that an opinion was or would have been unfavorable, flowing from the infringer's failure to obtain *or*

6

*produce* an exculpatory opinion of counsel, is no longer warranted.") (emphasis added). Similarly, "an accused infringer's failure to obtain legal advice does not give rise to an adverse inference with respect to willfulness." *In re Seagate Tech., LLC*, 497 F.3d at 1370 (citation omitted).

Thus, Plaintiffs may not attempt to draw any adverse inference regarding willfulness from Defendant's failure to produce an opinion of counsel at trial. Nonetheless, for purposes of trial, Defendant's decision not to waive privilege over an opinion of counsel leaves Defendant in essentially the same position that it would be in had it not obtained any opinion of counsel at all.[1] Failure to produce an opinion of counsel at trial can be considered by the finder of fact as part of the "totality of circumstances" regarding willfulness. *See Broadcom*, 543 F.3d at 683 and 700.[2] Thus, Plaintiffs should be permitted to introduce evidence or argument of this failure to produce

---

[1] If Defendant chooses to argue that any infringement was not willful because it sought opinions of counsel, then presumably Plaintiffs would be entitled to respond that Defendant is withholding those opinions of counsel. Defendant's motion in limine indicates that Defendant does not intend to make such an argument, so the Court need not resolve any issues of admissibility or privilege waiver that such a situation might raise.

[2] *See also Broadcom*, 543 F.3d at 698 (citations omitted) (emphasis added):

[I]n the context of instructions pertaining to willfulness, the district court instructed the jury as follows:

> In considering whether [the accused infringer] acted in good faith, you should consider all the circumstances, including whether or not [the accused infringer] obtained and followed the advice of a competent lawyer with regard to infringement. The absence of a lawyer's opinion, by itself, is insufficient to support a finding of willfulness, and you may not assume that merely because a party did not obtain an opinion of counsel, the opinion would have been unfavorable. However, *you may consider whether [the accused infringer] sought a legal opinion as one factor in assessing whether, under the totality of the circumstances, any infringement by [the accused infringer] was willful*.

This instruction comports with our holding in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge, GmbH v. Dana Corp.*, where we held that there is not "a legal duty upon a potential infringer to consult with counsel, such that failure to do so will provide an inference or evidentiary presumption that such opinion would have been negative."

an opinion of counsel at trial,[3] although Plaintiffs cannot submit that any adverse inference should be drawn as to what the content of an opinion of counsel would have been. For example, Plaintiffs cannot argue that the failure to produce an opinion of counsel at trial means that any opinion obtained was negative or would have been negative, nor can Plaintiffs present evidence or argument that Defendant obtained an opinion of counsel but has declined to produce it.[4] Any such arguments, inferences, insinuations, or implications would be irrelevant and would put "inappropriate burdens on the attorney-client relationship." *In re Seagate Tech., LLC*, 497 F.3d at 1370 (quotation omitted). Defendant's motion in limine should thus be GRANTED IN PART and DENIED IN PART as to item number 6, in accordance with the foregoing.

7.  Predicate Devices Listed in BD's 510(K) Submissions

Defendant "requests that the Court preclude [Plaintiffs] from offering evidence that [Defendant]'s and Saf-T-Med's 510(k) submissions list VanishPoint as a predicate device to support its argument that the accused Integra 1mL and 3mL syringes infringe." Dkt. No. 223 at 5. Plaintiffs respond in their letter briefing that they will not offer such evidence without first approaching the bench. *See also* Dkt. No. 259 at 6. Defendant submits that "[i]n 510(k) submissions, the Food and Drug Administration requires applicants to demonstrate 'substantial equivalence' to a predicate device." *Id.* (citing 21 C.F.R. § 807.92). "FDA equivalence is irrelevant to patent law because it involves fundamentally different inquiries." *Univ. v. Datascope Corp.*, 543 F.3d 1342, 1349 n.3 (Fed. Cir. 2008). Defendant's motion in limine

---

[3] *Cf. id.* at 699 ("It would be manifestly unfair to allow opinion-of-counsel evidence to serve an exculpatory function . . . and yet not permit patentees to identify failures to procure such advice as circumstantial evidence of intent to infringe.")

[4] Even without explicit argument, evidence that Defendant obtained opinions of counsel but has declined to produce them would likely lead to an inference by the jury that such opinions of counsel were negative, even if the Court gives a limiting instruction. In addition to the impermissibility of such an inference, any probative value would be substantially outweighed by the danger of unfair prejudice and jury confusion. *See* Fed. R. Evid. 403.

should be GRANTED as to item number 7.

## II. PLAINTIFFS' MOTIONS IN LIMINE

1. Inequitable Conduct

Plaintiffs submit that the parties have agreed that Defendant's inequitable conduct counterclaim will be tried to the Court in a separate bench trial following the jury trial. Dkt. No. 229 at 1. In its letter briefing, Defendant presents no opposition to Plaintiffs' motion. *See also* Dkt. No. 261. Plaintiffs' motion in limine should be GRANTED as to item number 1.

2. Any Evidence, Statement, or Argument Contrary to the Court's Claim Construction

Plaintiffs argue that they expect Defendant will present evidence and arguments that are contrary to the Court's rulings on claim construction. In particular, Plaintiffs request the following clarifications: (1) the retainer member and needle holder can be separate or unitary; (2) the syringe body can be two pieces; (3) the plunger wall can be two pieces; and (4) cutting or breaking can be involved in releasing the needle holder. *See* Dkt. No. 229 at 2-4. In its letter briefing, Defendant "do[es] not agree with all the verbiage" in Plaintiffs' motion regarding claim construction but agrees to approach the bench before presenting any evidence on this subject. Defendant also submits that "[t]he Court need not address at this time the arguments made by [Plaintiffs] subsumed within [their] Motion in Limine." Dkt. No. 261 at 3. Nonetheless, the parties appear to dispute some claim construction issues, and the Court is obligated to resolve such disputes. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

As to (1), the retainer member and needle holder can be separate or unitary, as noted in the Court's Amended Order regarding Plaintiffs' Motion to Preclude Certain Testimony of Expert Wilmer Sibbitt. Dkt. No. 260 at 2-3. Defendant acknowledges that its argument is

9

directed to presence of a "retainer member," a "bridging portion," and a "holding force" rather than to whether the claimed retainer member and needle holder must be separate pieces. *See* Dkt. No. 261 at 2. Thus, aside from what the Court has already resolved, the Court finds no claim construction dispute but finds that Plaintiffs' motion should be granted as to (1).

As to (2), Defendant submits that "[t]he fact that [Defendant]'s 3ml [accused] syringe places the retraction mechanism in a separate housing is relevant to the lack of the claimed 'retainer member.'" Dkt. No. 261 at 2. Without addressing issues of infringement, the Court finds that the syringe body need not be one-piece, as noted in the Court's Claim Construction Order. Dkt. No. 122 at 6 (finding no reason to deviate from previous finding, by Judge Davis in case involving patents in suit, that it would be "improper to limit the term ['body'] to a preferred embodiment containing only a one-piece body"). Plaintiffs' motion should therefore be granted as to (2).

As to (3), whether the plunger wall can be two pieces, Plaintiffs submit that "Defendant initially advanced this position during the claim construction proceeding, but dropped the term when the Court ordered the parties to rebrief the issues after the '224 patent was joined in the case." Dkt. No. 229 at 3. Indeed, the parties originally disputed the term "plunger" but did not ultimately submit that term to the Court during claim construction proceedings. *Compare* 3/14/2008 Joint Claim Construction Statement, Dkt. No. 75, Ex. A at 22 (proposing that "plunger" should be construed to mean "[a] piston with a head portion, an end portion and a hollow interior in between, all defined by a single longitudinally extending tubular wall"), *with* 12/3/2008 Joint Claim Construction Chart, Dkt. No. 114 ("plunger" not identified as disputed term); *see also* Defendant's 7/2/2008 Opening Claim Construction Brief, Dkt. No. 91 at 9 n.4 ("In the interests of reducing the number of disputed terms, Defendant agrees that the following

terms need no construction: 'plunger' . . . ."); Defendant's 11/14/2008 Claim Construction Brief, Dkt. No. 112 ("plunger" not argued).  Also, "plunger" was not among the terms previously construed by Judge Davis in other litigation.

Defendant submits that "the two-piece nature of the plunger in the 3 ml [accused] device is relevant to the lack of 'vents' in [Defendant]'s products because the outer wall of one piece of the plunger completely covers the core pin holes in the other piece of the plunger."  Dkt. No. 261 at 2-3.  Defendant's argument appears to be directed primarily to factual issues of infringement. Nonetheless, the Court notes that while the patents in suit describe and depict embodiments having a one-piece plunger wall, Defendant has not shown that the term "plunger" should be limited to such one-piece embodiments.  The Court makes this finding to resolve any dispute as to the meaning of the term "plunger," but because the parties have not presented competing claim constructions, the Court does not otherwise construe the term "plunger."  Plaintiffs' motion should be granted as to (3).

As to (4), the Court has previously found that cutting or breaking may be involved in releasing the needle holder but that release of the needle holder must involve release of a clamping or frictional force that keeps the needle in the projecting position.  *See* 9/21/2009 Order regarding Defendant's Motion for Partial Summary Judgment of Non-Infringement, Dkt. No. 239 at 6-8.  Defendant acknowledges the Court's modifications and clarifications in this regard.  *See* Dkt. No. 261 at 1-2.  Plaintiffs' motion should therefore be granted as to (4).

In accordance with the foregoing, Plaintiffs' motion in limine should be GRANTED as to item number 2.

### 3. Attempted or Successful Design Around

Plaintiffs submit:

It is anticipated that Defendant will attempt to argue that the accused syringes were designed to avoid the asserted patents. However, in response to a 30(b)(6) deposition notice, Defendant refused to produce a corporate representative on the topic of attempts to design around the asserted patents, asserting that there was no non-privileged information on the topic. Having avoided discovery through use of the privilege, Defendant should not now be allowed to argue or present evidence that anyone at [Defendant] ever attempted to design around the asserted patents, either during the development of the accused syringes or at any other time.

Dkt. No. 229 at 4. In its letter briefing, Defendant submits it is "agreeable to approaching the bench" and presents no opposition to Plaintiffs' motion. *See also* Dkt. No. 261. Plaintiffs' motion in limine should be GRANTED as to item number 3.

### 4. Accused Products Covered by Any Non-Asserted Patent

Plaintiffs submit that "Defendant will attempt to argue that the accused syringes do not infringe the asserted patents because Defendant has one or more patents that it owns or licenses that cover the accused products." Dkt. No. 229 at 4. Plaintiffs urge that "whether the accused product is covered by one or more other patents [is irrelevant because] a patent does not grant its owner the right to make the invention." *Id.* (citing *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001)). In its letter briefing, Defendant submits that it "does not intend to argue that the [accused] product is 'covered' by [certain] Safety Med patents, but [Defendant] would like to present evidence to the jury that [Defendant] purchased the patents owned by Safety Med and used those patents and the technology contained therein to develop the Integra product." Dkt. No. 261 at Appx. Defendant submits that it must present such evidence to refute Plaintiffs' allegations that Defendant "copied" Plaintiffs' technology. Dkt. No. 261 at 3. In particular, Defendant argues that "the jury is certainly entitled to hear about

the origins of [Defendant's] products, how they incorporate key aspects of the Safe-T-Med technology (including the use of a cutter to achieve retraction), and the fact that one of the Safe-T-Med patents now owned by [Defendant] in fact renders some of the claims anticipated or obvious." *Id.*

On balance, Plaintiffs' limine item number 4 should be GRANTED IN PART as to any argument by Defendant that it does not infringe because the accused product is purportedly covered by patents that Defendant owns or licenses. *See Advanced Cardiovascular Sys.*, 265 F.3d at 1309 ("The fact that [accused infringer's] patent might read on the [accused device] is totally irrelevant to the question of whether [the accused infringer] willfully infringed another patent.").

Nonetheless, Defendants should be allowed to present evidence of independent development to rebut allegations that Defendant willfully infringed or that Defendant copied Plaintiffs' technology. Such development efforts purportedly include development of intellectual property, such as patents. The Court can, however, give the jury a limiting instruction to explain that although the Court is allowing testimony concerning patents owned or licensed by Defendant, the fact that Defendant owns or licenses patents is not a defense to infringement in this case. Such a limiting instruction can also explain that the Court is admitting the testimony for the limited purpose of rebutting Plaintiffs' allegations that any infringement was willful. Further, evidence of Defendant's development efforts and intellectual property, including patents, may be relevant to a reasonable royalty analysis. *See Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. N.Y. 1970) (factor 13 includes considering the "portion of the realizable profit that should be credited to the invention as distinguished from "significant features or improvements added by the infringer"). Plaintiffs' limine item number 4

13

should therefore be DENIED IN PART such that Defendant can present evidence of its own development efforts and patents for the limited purposes of rebutting allegations of willfulness and analyzing a reasonable royalty.

5.  Asserted Patents Not Solely Invented by Thomas Shaw

Plaintiffs submit that because Defendant's Invalidity Contentions do not challenge the accuracy of inventorship, Defendant should be prohibited from challenging inventorship at trial. Dkt. No. 229 at 5.  In its letter briefing, Defendant submits it is "agreeable to approaching the bench" and presents no opposition to Plaintiffs' motion.  *See also* Dkt. No. 261.  The Court does not find a challenge to inventorship in the Final Pretrial Order.  *See* Dkt. No. 244 at 7-11. Plaintiffs' motion in limine should therefore be GRANTED as to item number 5.

6.  Patent Office Used Improper or Lower Standard

Plaintiffs move to exclude any argument "that the Asserted Patents should be afforded less of a presumption of validity because they were granted under the pre-KSR standard for obviousness."  Dkt. No. 229 at 5.  In its letter briefing, Defendant submits it is "agreeable to approaching the bench" and presents no opposition to Plaintiffs' motion.  *See also* Dkt. No. 261. The Court therefore presumes that Defendant does not intend to argue to the jury that the weight of the presumption of validity has been lessened by *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).  Plaintiffs' motion in limine should be GRANTED as to item number 6.

7.  Loss of Telephone Call Between Ms. Salerno and Mr. Erbs

Plaintiffs submit that a recording of a particular telephone conversation was inadvertently destroyed during discovery.  Dkt. No. 229 at 6.  Plaintiffs argue that evidence or argument regarding the existence of the recording or the circumstances of its loss should be excluded.  *Id.* In its letter briefing, Defendant submits it is "agreeable to approaching the bench" and presents

no opposition to Plaintiffs' motion.  *See also* Dkt. No. 261.  Plaintiffs' motion in limine should be GRANTED as to item number 7.

8.  Personal Matters of Thomas Shaw or Any Other Plaintiffs' Witness

Plaintiffs move to exclude "any mention of personal relationships of a witness beyond the simple fact of their marital status."  Dkt. No. 229 at 7.  In its letter briefing, Defendant submits it is "agreeable to approaching the bench" and presents no opposition to Plaintiffs' motion.  *See also* Dkt. No. 261.  Plaintiffs' motion in limine should be GRANTED as to item number 8.

9.  Unrelated Claims or Lawsuits Against Retractable or Thomas Shaw

Plaintiffs move to exclude reference to any of "a number of civil complaints relating to employment issues" or that "Defendant has a separate patent infringement lawsuit pending against [Plaintiff] Retractable Technologies."  Dkt. No. 229 at 7.  In its letter briefing, Defendant submits it is "agreeable to approaching the bench" and presents no opposition.  *See also* Dkt. No. 261.  Also of note, Defendant has a similar limine item to exclude mention of other litigation, including Defendant's patent infringement suit against Plaintiff Retractable Technologies, discussed above.  Plaintiffs' motion in limine should be GRANTED as to item number 9.

10.  Indefiniteness, Laches, and Estoppel

Plaintiffs argue that issues of indefiniteness, laches, and estoppel are legal issues and are not relevant to any issue to be decided by the jury.  Dkt. No. 229 at 8.  In its letter briefing, Defendant submits it is "agreeable to approaching the bench" and presents no opposition.  *See also* Dkt. No. 261.  Plaintiffs' motion in limine should be GRANTED as to item number 10.

### III.  CONCLUSION

As detailed above, Defendant's Motions in Limine are hereby: **GRANTED** as to limine item numbers 1-3 and 7; **GRANTED IN PART** and **DENIED IN PART** as to limine item

Case 2:07-cv-00250-DF-CMC    Document 262    Filed 10/08/09   Page 16 of 16 PageID #:  6441

numbers 4 and 6; and **DENIED** as to limine item number 5.

Also as detailed above, Plaintiffs' Motions in Limine are hereby: **GRANTED** as to limine item numbers 1-3 and 5-10; and **GRANTED IN PART** and **DENIED IN PART** as to limine item number 4.

**IT IS SO ORDERED**.

**SIGNED this 8th day of October, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE