IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RETRACTABLE TECHNOLOGIES INC., § <br> and THOMAS J. SHAW, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> BECTON, DICKINSON AND COMPANY, § <br> § <br> Defendant. § | | CIVIL ACTION NO. 2:07-CV-250 |

**O R D E R**

Before the Court is the Motion for Injunction filed by Plaintiffs Retractable Technologies Inc. and Thomas J. Shaw (collectively, "RTI"). Dkt. No. 342. Also before the Court is Defendant Becton, Dickinson and Company's ("BD's") response and RTI's reply. Dkt. Nos. 349 & 354. The Court held a hearing on February 9, 2010. Having considered the briefing, oral arguments of counsel, and all relevant pleadings and papers, the Court finds that RTI's motion should be GRANTED.

**I. BACKGROUND**

The Court held a jury trial from October 30, 2009, to November 9, 2009, on RTI's allegations of infringement by BD of United States Patents No. 5,632,733 ("the '733 Patent"), 6,090,077 ("the '077 Patent"), and 7,351,224 ("the '224 Patent"). The jury found infringement on at least one claim of each of these asserted patents but did not find willfulness. *See* Verdict Form, Dkt. No. 319 at 2-3. The jury did not find any of the asserted claims invalid. *Id.* at 4-5. The jury awarded a reasonable royalty of $5,000,000.00. *Id.* at 6.

1

## II. LEGAL PRINCIPLES

The Supreme Court of the United States addressed the propriety of issuing permanent injunctions in patent cases in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). The Supreme Court determined that equitable relief is not mandatory in patent cases, but instead should be decided in accordance with traditional equitable considerations. *Id.* at 392-94. The Court should consider the traditional four-factor test for permanent injunctive relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391. Further, the Supreme Court held that:

> [T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.

*Id.* at 394.

## III. DISCUSSION

RTI moves for entry of a permanent injunction and addresses the four *eBay* factors. *See* Dkt. No. 342. BD responds and submits that "if the Court does not deny the injunction outright, an evidentiary hearing is necessary to resolve the issues raised by the motion." Dkt. No. 349 at 2; *see also* Dkt. No. 329 at 14. BD also requests that "if any form of equitable relief is entered at this time, it should be stayed pending appeal." *Id.* at 2 & 14-15. As to such a stay, RTI replies that BD's appeal will be difficult and that "if the injunction is stayed while this case is on appeal, BD will be allowed to continue its infringing use for a substantial portion of the patents'

remaining life." Dkt. No. 354 at 5.

## A. Irreparable Injury and Inadequate Remedy at Law

As to irreparable injury, RTI argues that "[b]ecause of the size and product disparity between [RTI and BD], the fact that they compete directly with on another, and the fact that [RTI] is manufacturing its own invention rather than licensing it to competitors, [RTI] would suffer an irreparable injury and lack an adequate remedy at law unless this Court issues an injunction." Dkt. No. 342 at 3. RTI argues that it directly competes with BD, that RTI has refused to grant licenses to direct competitors, and that "BD's sale of poor quality safety syringes has harmed [RTI's] market." *Id.* at 3-5.

BD responds that "RTI's allegations of irreparable harm are . . . belied by undisputed evidence that VanishPoint sales have grown steadily since BD launched the Integra in 2002, such that VanishPoint currently outsells Integra 3 to 1." Dkt. No. 349 at 1; *see also* Dkt. No. 349 at 8-9. BD also points to RTI's delay in filing suit five years after BD began selling its 3mL Integra in 2002. *Id.* at 10. As to RTI's own business, BD argues that evidence of direct competition is not sufficient to support grant of an injunction. *Id.* at 4-5. BD also submits that "[a] patent injunction proceeding [is] the wrong vehicle for litigating" RTI's allegations regarding BD's market dominance. *Id.* at 6. BD further argues that RTI's theory that BD "poisoned the market" for retractable syringes has already been found "fraught with speculation" by the Court. *Id.* at 7 (quoting 10/2/2009 Order, Dkt. No. 248 (regarding BD's Motion to Exclude Expert Testimony of Walter Bratic)). As to RTI's argument that it does not license, BD argues that RTI has licensed the patents-in-suit to a Chinese manufacturer for sale in China. *Id.* at 9.

RTI replies that BD itself sought an injunction against Tyco in a patent suit involving

3

syringes. Dkt. No. 354 at 3.  RTI also submits that it has lost sales and that BD has argued in other litigation that it was entitled to an injunction because of lost sales.  *Id.* at 4.

Irreparable harm lies only where injury cannot be undone by monetary damages.  *See Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (citations omitted).  Here, RTI's retractable syringes already outsell BD's by about three to one.  *See* 11/4/2009 A.M. Tr., Dkt. No. 327 at 129:13-25; 11/6/2009 A.M. Tr., Dkt. No. 333 at 27:24-28:5. Still, RTI is losing market share to BD at a time that the market is generally migrating toward safety needles, such as RTI's.  *See* 2/9/2010 Hr'g Tr., Dkt. No. 360 at 27:23-29:3.  To the extent RTI submits that BD has damaged the market through what amount to alleged antitrust violations, RTI's remedy lies in antitrust.  Nonetheless, "[d]ifficulty in estimating monetary damages is evidence that remedies at law are inadequate," *i4i Ltd. Partnership v. Microsoft Corp.*, --- F.3d ----, 2010 WL 801705, at HN54 (Fed. Cir. Mar. 10, 2010), and BD's infringing sales complicate any estimate of the damages that RTI will suffer if BD is not enjoined.  Further, RTI is a small company and the patented invention is RTI's main product.  *See* Dkt. No. 342 at 2-3 & 6-7. On balance, RTI has shown that it has suffered irreparable harm and that it has no adequate remedy at law.

## B.  Balance of Hardships

As to the balance of hardships, RTI submits that BD sells many products whereas "the VanishPoint Safety Syringe [RTI's embodying product] accounted for 98.6% of [RTI]'s sales" during the first 9 months of 2009.  Dkt. No. 342 at 6.  RTI also argues that it "should not be required to continue to compete against an infringing form of a poor product that effectively dissuades the public from using safety syringes in general and the VanishPoint Safety Syringe in

particular." *Id.* at 7.  BD responds that "RTI already has a majority share of retractable syringes sold in the United States."  Dkt. No. 349 at 10.  BD also submits it would suffer harm through loss of its investment in technology acquisition, product design, and manufacturing equipment, as well as through loss of goodwill if BD were forced to cancel customer contracts.  *Id.* at 11.  RTI replies that "BD can easily withstand an injunction preventing the manufacture and sale of its Integra syringes" because "BD's syringe business is overwhelmingly based on its other safety syringes" and "[BD] has voluntarily discontinued its 1mL syringe."  Dkt. No. 354 at 5.

On one hand, BD would suffer harm to its reputation if forced to cancel contracts due to an injunction.  Also, as BD emphasized during trial and in its post-trial briefing, RTI's retractable syringes already outsell BD's by about three to one.  *See* 11/4/2009 A.M. Tr., Dkt. No. 327 at 129:13-25; 11/6/2009 A.M. Tr., Dkt. No. 333 at 27:24-28:5.  On the other hand, RTI is a small company, the patented invention is RTI's main product, and RTI is a direct competitor with BD.  *See* Dkt. No. 342 at 6-7.  On balance, RTI has shown that the balance of hardships favors entry of a permanent injunction.  *See i4i*, 2010 WL 801705, at HN55.

**C.  Public Interest**

As to the public interest, RTI argues that its product is a much safer retractable syringe than BD's and, "if it served the public purposes to have access to other types of syringes . . ., BD has many different syringes that can fill that need."  Dkt. No. 342 at 8.

BD responds that "an injunction would threaten the public interest by exacerbating the already existing shortage of safety syringes," particularly in light of the current "pandemic of H1N1 influenza, commonly referred to as 'swine flu.'"  Dkt. No. 349 at 1 & 2.  BD submits that despite full production, "it is currently operating at minimal to zero inventory for these products

5

in the sizes required for vaccinations—and several sizes are even on backorder." *Id.* at 3. BD also submits that "federal law prohibits enjoining the millions of Integra sales made under contracts with the United States Government." *Id.* at 3 & 11 (citing *Advanced Software Design Corp. v. FRB of St. Louis*, 583 F.3d 1371, 1375 (Fed. Cir. 2009) (discussing 28 U.S.C. § 1498)). For October 2009 through March 2010, the U.S. Government has ordered 213 million safety needles and syringes for H1N1 vaccines, "including more than 27 million Integra units." *Id.* BD argues that if an injunction were ordered, "RTI has presented no evidence that it could make up the deficit with VanishPoint syringes." *Id.* at 4. BD further submits that "[a]n injunction would also remove from the market the only retractable syringe with a detachable needle—a feature that makes the Integra far more versatile than RTI's fixed needle syringe." *Id.* at 1 & 4.

RTI replies that BD "has not shown the existence of any current government contracts"[1] and "has made no attempt to show that [RTI] (or anyone else in the industry) could not fill the needs that BD is concerned it cannot meet." Dkt. No. 354 at 1-2. RTI also submits that near-future demand can be readily met, that RTI "has substantial quantities of oversupply right now," and that "[i]f a true emergency does arise, this Court has the power to amend its injunction to deal with such a contingency." *Id.* at 2. RTI also argues that BD overstates the need for syringes with detachable needles and that BD's Integra "cannot be used for 'needle-free' uses because the threads on the needle attachment cannot be used on other standardized threads used by different manufacturers for other components." *Id.* at 2-3.

The retractable syringes produced by both RTI and BD can be beneficial medical

---

[1] RTI submits that aside from a contract to provide syringes for H1N1 vaccinations that was cancelled on January 15, 2010, BD has presented only "purchase agreements that cover orders when those orders are made." Dkt. No. 354 at 1.

products for at least some applications.  An immediate permanent injunction would reduce the availability of these products by removing BD from the retractable syringe marketplace.  Further, although RTI submits that the Court would retain jurisdiction to modify a permanent injunction if an emergency arose, the public interest would nonetheless favor uninterrupted availability.  For example, if an injunction were entered and BD later sought to manufacture infringing syringes in order to meet an emergency demand, BD would first need to seek leave of Court, which would consume time that could be of great importance in a public health emergency.  On balance, the public interest would be disserved by immediate entry of a permanent injunction.  *See Cordis Corp. v. Boston Scientific Corp.*, No. 04-1098, 99 Fed. Appx. 928, 2004 WL 1194246, at *5 (Fed. Cir. May 28, 2004) (finding that "a strong public interest supports a broad choice of drug-eluting stents"); *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1547-48 (Fed. Cir. 1995) (citation omitted).

**D.  Summary and Conclusion**

RTI has shown that the balance of hardships, irreparable harm, and inadequacy of remedies at law weigh in favor of a permanent injunction.  The public interest, however, would be disserved by immediate entry of an injunction.  This public interest outweighs RTI's desire to exclude BD's infringing sales from the retractable market during market conversion in the near future.  On balance, RTI's motion for an injunction should be GRANTED but the injunction should be STAYED for the longer of: exhaustion of an appeal of the above-captioned case; or twelve (12) months from the date of entry of a permanent injunction.

## IV.  CONCLUSION

RTI's Motion for Injunction (Dkt. No. 342) is hereby **GRANTED**.  Any permanent injunction in the above-captioned case is hereby **STAYED** for the longer of: exhaustion of an appeal of the above-captioned case; or twelve (12) months from the date of entry of a permanent injunction.

**IT IS SO ORDERED.**
**SIGNED this 19th day of May, 2010.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE